# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION AT DAYTON

KEITH L SIGLER, *et al.*,                    :

      Plaintiffs,                          :          Case No. 3:07cv092

 vs.                                         :          District Judge Walter H. Rice
                                     Magistrate Judge Sharon L. Ovington

CITY OF ENGLEWOOD, *et al.*,                 :

      Defendants.                          :

## REPORT AND RECOMMENDATIONS[1]

## I.      INTRODUCTION

Keith Sigler, a former Police Officer for the City of Englewood, Ohio, and his wife Susan Sigler, bring this case through counsel claiming that "Defendants retaliated against them by wrongfully discharging Keith Sigler from his position as a police officer because of Susan Sigler's exercise of her First Amendment rights."  (Doc. #1 at 3, ¶1).

Defendants are the City of Englewood (the City); Eric A. Smith, City Manager; Mark Brownfield, City Chief of Police; Janine Cooper, City Finance Director; and City Police Officers Julie Brownfield, David Douglas Hacker, Eric Totel, and Sergeant David Pelkey.

Plaintiffs' Complaint raises, among others, the following claims:

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

| Count I: | First Amendment retaliation; |
|---|---|
| Count III: | Age discrimination in violation of the Age Discrimination in Employment Act ["ADEA"], 29 U.S.C. § 623, and of 42 U.S.C. § 1983; |
| Count IV: | Intentional infliction of emotional distress; and |
| Count VI: | Disability discrimination in violation of Ohio Rev. Code § 4112.02(A). |

(Doc. #16 at 2).[2]  The case presently is before the Court upon Defendants' Motion for Judgment on the Pleadings (Doc. #15), Plaintiffs' Memorandum In Opposition (Doc. #16), Defendants' Reply (Doc. #17), and the record as a whole.

## II.    FACTUAL BACKGROUND

As required at this early stage of the case, the events at issue are viewed from Plaintiffs' vantage point by accepting their well-pled factual allegations as true and construing the allegations in their favor.  *See Lindsay v. Yates*, 498 F.3d 434, 438 (6th Cir. 2007) (and cases cited therein).  Doing so reveals the following.

In May 1988, Plaintiff Keith Sigler began working as a City of Englewood Police Officer.  His job performance over the years was exemplary if not outstanding, a fact noted by his supervisors in their job evaluation reports:  "Officer Sigler is an example of what a senior officer should be.  Supervisors rely on his abilities and expertise to get the job done.  He is an excellent Police Officer . . .";  "[He is] very cooperative and respectful of the chain of command . . .";  "He is dependable, honest, and highly skilled.  It is a

---

[2]Plaintiffs have voluntarily dismissed the other claims raised in their Complaint.  (Doc. #16 at 2).

pleasure to have Officer Sigler on a shift[;] he contributes much to the less experienced officers . . ."  (Doc. #1 at 6, ¶16).  Despite this history of praiseworthy job performance, Officer Sigler's employment was terminated on March 21, 2006.  At that time, he had served eighteen years with the City's Police Department.  (Doc. #6 at 6, ¶15).

The only prior discipline in Officer Sigler's employment record was a "preliminary reprimand."  (Doc. #1 at 9, ¶41).  It arose because of an email that Officer Sigler sent to Julie Brownfield, another City Police Officer and a Defendant in this case.  Officer Sigler's email questioned "the lack of accountability of the 'gift fund.'  Notices for expenditures were no longer received by employees and the fund was frequently out of money...."  (*Id*. at ¶40).  The Complaint implies that Julie Brownfield was responsible for the gift fund.

Many of the other events described in the Complaint concern the alleged impact on the City's Police Department of the personal relationship and eventual marriage of Defendant Police Chief Brownfield and Police Officer Julie Parks – now, Julie Brownfield.  The marriage created tension within the Police Department.  Plaintiffs allege, "There was a great deal of discussion among staff, as well as the human resources director and the Mayor about the Police Chief working with his wife, a police officer. There were 'intense' discussions between sergeants in the department and Chief Brownfield about the difficulties of supervising the boss's wife."  (Doc. #1 at 7, ¶¶ 23-24).

In May 2005, Chief Brownfield chastised everyone attending an in-service training

-3-

because one officer made a comment about Julie Brownfield receiving preferential treatment.  On another occasion, Chief Brownfield angrily confronted his wife's supervisor, Sergeant Pelkey, for attempting to speak to Julie Brownfield about the fact that she had attended a City employee cookout on a day she was absent from work on sick leave.  "The Chief indicated that any questions directed at his wife were directed at him because they had jointly made the decision for his wife to attend a social function while on sick leave."  (Doc. #1 at 8, ¶29).

Sometime in 2004, Plaintiff Susan Sigler became concerned about the potential increased danger resulting from Chief Brownfield's marriage to Officer Julie Parks.  Susan Sigler's fears arose as a result of a statement by Sergeant Pelkey.  Plaintiffs explain that "during a discussion about Chief Brownfield and Julie, Sergeant Pelkey made a comment that the supervisor-subordinate relationship increased the potential for danger.  Specifically, Sergeant Pelkey theorized that if the Englewood Police Department had to respond to a bank robbery, it was more likely that the Chief would send someone other than his wife."  (Doc. #1 at 10, ¶43).

In late 2005, Officer Sigler was diagnosed with "either a lipoma or a hernia."  (Doc. #1 at  at 6, ¶17).  Surgeons removed a tumor on January 3, 2006.  Subsequent testing revealed that it was malignant, and on February 6, 2006, he underwent a second surgery.  (*Id*.)  Meanwhile, in early February 2006 – two months before Officer Sigler's employment was terminated – "Plaintiff Susan Sigler was frustrated by the situation at the Englewood Police Department.  She believed that her husband and all of the Englewood

Police officers, as well as the Englewood citizens, were at risk due to Chief Brownfield's marriage to a subordinate officer. She further believed that nothing was being done by the City administration to address the situation." (Doc. #1 at 10, ¶42). These beliefs led Susan Sigler to draft "an anonymous handbill detailing her concerns . . ." (*Id*. at ¶44). Officer Sigler did not assist Susan in preparing or distributing the handbill.

For a reason not explained in the Complaint, Susan Sigler also sent an anonymous letter to the Clark County Sheriff concerning Officer Julie Brownfield's dissolution from her prior husband (Kevin Parks). "Plaintiff informed the Sheriff that Julie failed to notify the Court that she was pregnant at the time of dissolution . . ." (*Id*. at ¶48).

About five days after Susan Sigler distributed the anonymous handbill, Officer Sigler's supervisor – Sergeant Pelkey – visited Plaintiffs' home and "questioned the Siglers about the letters." (Doc. #1 at 11, ¶50). Sergeant Pelkey did not tell Plaintiffs that Officer Sigler was suspected of writing and distributing the anonymous handbill. At that time (early- to mid-February 2006), Officer Sigler was on leave from work recovering from his second surgery.

On February 13, 2006, an internal affairs investigation began concerning the anonymous handbill and letter. The next day, Sergeant Pelkey returned to Plaintiffs' home and advised Officer Sigler that he was under an internal investigation for alleged misconduct relating to the anonymous handbill and letter. "Plaintiff Susan Sigler advised Sergeant Pelkey that Keith [Sigler] did not do it." (*Id*. at ¶54).

Officer Sigler returned to work a month later and was interviewed by internal

affairs. He also was assigned to a different shift and removed from his positions as Acting Supervisor and Training Coordinator. A memo written by Sergeant Pelkey explained that the reassignment was "due to confidence issues regarding Silger's status as an Acting Supervisor." (Doc. #1 at 12, ¶57). Sergeant Pelkey's memo further stated, "If there are no further shift disruptions during this calendar year you will be allowed to bid the shift of your choosing for the calendar year 2007." (*Id.*).

Officer Sigler's termination followed shortly after these events, only six days after he had returned to work. (*Id.* at ¶61). His health insurance had been terminated one day earlier, on March 20, 2006. The City hired a younger man to replace Officer Sigler. (Doc. #1 at 13, ¶64).

## III.    APPLICABLE STANDARDS

"After the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). The standard applicable to motions under Rule 12(c) "is the same as a review under Rule 12(b)(6)." *Vickers v. Fairfield Med. Ctr.*, 453 F.3d 757, 761 (6th Cir. 2006), *cert. denied*, 550 U.S. ___, 127 S. Ct. 2910 (2007) (citing *Grindstaff v. Green*, 133 F.3d 416, 421 (6th Cir. 1998)). The Court must "construe the complaint in the light most favorable to the plaintiffs, accept all of the complaint's factual allegations as true, and decide whether the plaintiffs can prove any set of facts in support of their claims that would entitle them to relief." *Lindsay*, 498

F.3d at 439.[3]  The Court, however, "need not accept as true legal conclusions or unwarranted factual inferences." *Mixon v. Ohio*, 193 F.3d 389, 400 (6th Cir. 1999).

In the context of employment discrimination cases, a plaintiff satisfies his or "her pleading burden by drafting 'a short and plain statement of the claim' consistent with Federal Rule of Civil Procedure 8(a) . . .  Provided that the plaintiff 'give[s] the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests,' the complaint must be upheld."  *Lindsay*, 498 F.3d at 439 (internal citations omitted).

## IV.    DISCUSSION

### A.    Plaintiffs' First Amendment Claims

Defendants contend that Plaintiffs' First Amendment retaliation claims must be dismissed for two broad reasons: (1) the individual Defendants lacked the authority to terminate Officer Sigler's employment; and (2) qualified immunity shields the individual Defendants from this claim.

Plaintiffs argue that dismissal is unwarranted because their Complaint sets forth facts supporting each element of a First Amendment retaliation claim as set forth in *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998), and similar cases.  (Doc. #16 at 3-7). Plaintiffs also argue that qualified immunity does not bar their First Amendment retaliation claim in light of *Sowards v. Loudon County*, 203 F.3d 426 (6th Cir. 2000),

---

[3]*Bell Atlantic Corp. v. Twombly,* ___ U.S. ___, 127 S. Ct. 1955 (2007) notwithstanding, *Erickson v. Pardus*, ___ U.S. ___, 127 S. Ct. 2197, 2200 (2007) suggests that the pleading requirement remains unchanged in civil rights actions.  *See Lindsay*, 498 F.3d at 440, n.6

*Adkins v. Bd. of Educ.*, 982 F.2d 952 (6th Cir. 1993), and other cases. (Doc. #16 at 7-8).

To state a claim for retaliation under the First Amendment, a Complaint must allege facts in support of three elements:

1. The plaintiff was engaged in a constitutionally protected activity;

2. The defendant's adverse action caused the plaintiff to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity; and

3. The adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights.

*Jenkins v. Rock Hill Local Sch. Dist.*, 513 F.3d 580, 585-86 (6th 2008) (citing *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998)).

In the case of government employees and "in situations analogous to public employment, where free speech rights must be balanced against the need to effectively manage a governmental entity," courts have examined whether a particular exercise of speech touches upon "a matter of public concern," so as to warrant constitutional protection. *See Pickering v. Bd. of Educ.*, 391 U.S. 563, 88 S. Ct. 1731 (1968). That "public concern test," however, "was meant to form a sphere of protected activity for public employees, not a constraining noose around the speech of private citizens." *Jenkins*, 513 F.3d at 586, n.1 (quoting with favor *VanDeelen v. Johnson*, 497 F.3d 1151, 1156-57 (10th Cir.2007)). "Private citizens cannot be punished for speech of merely private concern." *Id.* (quoting *Rutan v. Republican Party*, 497 U.S. 62, 95, 110 S. Ct. 2729 (1990)).

-8-

Defendants' qualified immunity argument hinges upon their assertion that neither Plaintiff can establish the violation of any constitutional right.  (Doc. #15 at 7-9). Because the existence of a constitutional violation is antecedent to any qualified immunity analysis, the basis for each Plaintiff's asserted First Amendment claim first will be examined separately.

### i. Susan Sigler

Because Mrs. Sigler is a private citizen rather than a public employee, the facts alleged in the Complaint are sufficient to establish the first element of her First Amendment claim.  *See Jenkins*, 513 F.3d at 586-87 (discussing, in part, *Gable v. Lewis*, 201 F.3d 769, 770-72 (6th Cir. 2000)).   Her distribution of an anonymous handbill criticizing the potential safety issues created for the City's police officers and the public by Defendant Chief Brownfield's marriage to a subordinate clearly constituted speech protected by the First Amendment.   Indeed, "[t]he right of an American citizen to criticize public officials and policies and to advocate peacefully ideas for change is 'the central meaning of the First Amendment.'"  *New York Times v. Sullivan,* 376 U.S. 254, 273 (1964); *see Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998).

Defendants, however, contend that Mrs. Sigler "cannot establish the second element" because "there is no allegation that the City of Englewood subjected [her] to adverse action or deprived her of a benefit sufficient to establish a claim of retaliation under 42 U.S.C. § 1983."  (Doc. #15 at 8).  In noting that Mrs. Sigler "was not arrested or

cited" and that she had "no employment relationship with the City" (*id.*), Defendants seem to suggest that Mrs. Sigler must have been deprived of a liberty or property interest in order to state a cognizable claim. In so doing, Defendants construe too narrowly the deprivations which trigger First Amendment concerns.

"Where, as here, the motive of the governmental actor is pertinent to the inquiry, the claimant, if engaged in a constitutionally protected activity . . . need only show that the act of retaliation consisted of the deprivation of a non-trivial commodity." *McBride v. Village of Michiana*, 30 F.3d 133 [table], 1994 WL 396143, at *4 (6th Cir. July 28, 1994) (citing, *inter alia*, *Rutan v. Republican Party*, 497 U.S. 62, 72 (1990) ("we find the assertion here that the employee petitioners had no legal entitlement to promotion, transfer, or recall beside the point")). Actionable deprivations thus have been found where a newspaper claimed that the defendants withheld advertising in retaliation for critical editorials and stories, *see North Mississippi Comm'ns Inc. v. Jones*, 874 F.2d 1064 (5th Cir. 1989), *cert denied*, 506 U.S. 863, 113 S. Ct. 184 (1992), and where the plaintiffs alleged "discrete acts of police surveillance and intimidation directed solely at silencing them." *See Gibson v. United States*, 781 F.2d 1334, 1338 (9th Cir. 1986).

"Moreover, any governmental action that falls short of direct prohibition but results in a chilling effect upon an individual's right of free speech may violate the First Amendment." *McBride*, 1994 WL 396143, at *4 (citing *Laird v. Tatum*, 408 U.S. 1, 11 (1972)). Thus, in determining whether the actions of a municipality's representatives

adversely affected a plaintiff's constitutional rights, "the test is whether their challenged activities are likely to chill the exercise of constitutionally protected speech." *Id.* (citing *Laird*, 408 U.S. at 13-14).

Analyzed against this backdrop, Susan Sigler unquestionably sustained an injury cognizable under 42 U.S.C. § 1983. Accepting Plaintiffs' allegations as true, Mrs. Sigler's exercise of her free speech right to disseminate information critical of public officials resulted in the termination of her husband's employment. The motive for that dismissal <u>is</u> "pertinent to the inquiry," as the police chief's presumed desire to quell criticism is the basis for Plaintiffs' retaliation claim, and the loss of her husband's income and benefits <u>is</u>, in this Court's view, "the deprivation of a non-trivial commodity" as to <u>Mrs.</u> Sigler, particularly at a time when Mr. Sigler was battling cancer. *See McBride*, 1994 WL 396143, at *4.

The Court finds that a financial consequence of such magnitude would be more than enough to "chill" the willingness of a person of ordinary firmness to continue to engage in the activity which produced that result. *See Jenkins*, 513 F.3d at 585-86.[4] Because the allegations of Plaintiffs' complaint also are sufficient to create an issue of material fact as to whether the adverse action against Mr. Sigler's employment – following so soon after Mrs. Sigler's handbill and letter, as well as the internal investigation into Mr. Sigler's suspected involvement – was motivated at least in part by

---

[4]We note *McBride*'s suggestion that such chilling effect alone may satisfy the second prong of *Jenkins*, even in the absence of a palpable injury. *See* 1994 WL 396143, at *4.

Mrs. Sigler's exercise of her constitutional rights, Plaintiffs have satisfied all three elements of the *Jenkins* framework for purposes of the present motion as against Mrs. Sigler. *See id.*

### ii. <u>Keith Sigler</u>

Facts satisfying the second and third elements of the test articulated in *Jenkins* are readily apparent on the face of the complaint as to Mr. Sigler, whose termination allegedly was precipitated by the handbills and letter criticizing the Brownfields. *See* Susan Sigler analysis, *supra*. For that reason, Defendants wisely challenge only Mr. Sigler's ability to satisfy the first element of the *Jenkins* test – *i.e.*, that he was engaged in a constitutionally protected activity. 513 F.3d at 585-86. Noting that Mr. Sigler claims "that he was terminated a result of the alleged protected speech of his wife, not his own protected speech" (Doc. #15 at 7), Defendants urge that "there is no clearly established protection to persons for the protected First Amendment speech of a third person." (*Id.* at 8).

Although Defendants' statement to that effect is accurate, they again take an unduly narrow view of Plaintiffs' claims. Count I of Plaintiffs' complaint is couched as a cause of action for "First Amendment Retaliation." As set forth in Plaintiff's opposing memorandum (*see* Doc. #16 at 6), the United States Supreme Court has recognized a separate right under the First Amendment "to freedom of association in 'intimate human relationships,'" particularly marriage. *See Adkins v. Bd. of Educ.*, 982 F.2d 952, 956 (6th

Cir. 1993) (citing *Roberts v. U.S. Jaycees*, 468 U.S. 609, 104 S. Ct. 3244 (1984)).

The plaintiff in *Adkins* was a high school secretary whose employment was not renewed after the school superintendent became embroiled in a job-related conflict with the plaintiff's husband, the high school principal. Holding that the school district could not retaliate against the plaintiff for her husband's actions without running afoul of the Constitution, the Court stated that "the right of association is violated if [government] action constitutes an 'undue intrusion' by the state into the marriage relationship." *Adkins*, 982 F.2d at 956. The state action need not cause "abandonment or dissolution" of the marriage in order to be actionable. *Id.*

The Sixth Circuit expanded on that right in *Sowards v. Loudon County*, 203 F.3d 426 (6th Cir. 2000). Ms. Sowards was dismissed from her position as a county jailer after her husband became a candidate for county sheriff. The Court first acknowledged that Ms. Sowards had a viable claim of First Amendment retaliation for exercising her protected right of political association by supporting her husband's campaign." *Id.* at 433. Then, noting that the plaintiff's claim that the current sheriff had dismissed her "because of her protected relationship with her husband . . . could constitute an undue interference in that relationship under *Adkins*," the Court concluded "that Sowards has met her burden at this juncture of establishing that she was engaged in the protected conduct of intimate association under the First Amendment." *Sowards*, 203 F.2d at 433. The Court then proceeded to analyze Ms. Sowards' claim under the two remaining prongs

repeated in *Jenkins, supra*, finding that "a dismissal qualifies as an adverse employment action for purposes of a retaliation claim," and that Ms. Sowards had "presented sufficient evidence upon which a reasonable juror could conclude that [the sheriff's] decision to terminate her employment was substantially motivated by her protected First Amendment associational rights." *Id.* at 433-34.

Like the plaintiffs in both *Adkins* and *Sowards*, Plaintiff Keith Sigler in this action has asserted a claim of First Amendment retaliation for job loss allegedly motivated by a spouse's actions. (*See* Doc. #1). Indeed, Mr. Sigler's claim arguably is more compelling than that in *Adkins*, in that Mr. Sigler presumably had a valid property interest in continued employment (*see* Doc. #1 at ¶14), whereas the secretary in *Adkins* did not, and the conduct undertaken by his wife was entitled to First Amendment protection, whereas that of the husband in *Adkins* presumably was not. The only significant difference, it seems, between Mr. Sigler's First Amendment retaliation claim and those of the plaintiffs in *Adkins* and *Sowards* is that those plaintiffs apparently specifically articulated their claims as being based on the right to intimate association, whereas Mr. Sigler's complaint does not. That omission should not be fatal to his claim.

Where, as here, a complaint sets out all factual allegations necessary to establish the elements of a viable claim for violation of a particular Constitutional right (*see* Doc. #1, ¶¶1-72), and also correctly identifies the source of that right (*see id.* at 13, "First Amendment Retaliation (42 U.S.C. 1983)"); and where that party's subsequent

-14-

memorandum opposing judgment on the pleadings also explicitly states that his claim is based upon the "constitutional right to freedom of association in intimate human relationships," specifically, "association with his wife Susan," and cites appropriate authority for the existence and applicability of that right (*see* Doc. #16 at 6-7); opposing parties cannot be heard to complain that they were denied "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). In this case, the failure of Defendants' reply to even to acknowledge Plaintiffs' arguments regarding the right to association as the basis for Mr. Sigler's claim (*see* Doc. #17 at 5 [continuing to insist that Mr. Sigler's termination "did not violate a clearly established right – he engaged in no speech . . ."] hints of an implicit recognition that such a claim would be viable.

Having determined that Plaintiffs' complaint satisfies Fed. R. Civ. P. 8(a)'s minimal notice pleading requirements in setting out a viable claim of First Amendment retaliation for Mr. Sigler's exercise of the protected right of intimate association with his wife, the Court should not grant Defendants' motion for judgment on the pleadings simply because Plaintiffs failed to use specific, 'magic' words to describe that claim in their complaint.

As Defendants are not entitled to judgment on the pleadings based on either Plaintiffs' failure to state a viable claim for relief, the Court will proceed to the qualified immunity issue.

### B.   Qualified Immunity Defense

The doctrine of qualified immunity precludes actions for damages against government officials on the basis of discretionary actions that do not "violate clearly established statutory or constitutional rights of which a reasonable person would have known."  *Williams v. Mehra,* 186 F.3d 685, 691 (6th Cir.1999) (*en banc*) (internal quotation marks omitted).  We analyze claims of qualified immunity using a three-part test, which requires us to determine (1) whether a constitutional right was violated; (2) whether that right was clearly established and one of which a reasonable person would have known; and (3) whether the official's action was objectively unreasonable under the circumstances.  *Id.*; *see also Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S. Ct. 2727 (1982).  In other words, a government agent is entitled to qualified immunity if he or she reasonably (even if erroneously) could have believed that his or her actions were lawful, in light of clearly established law.  *Hunter v. Bryant,* 502 U.S. 224, 227, 112 S. Ct. 534 (1991).

The analysis, *supra* at A, affirming each Plaintiff's success in setting forth a viable First Amendment retaliation claim, also affirmatively answers the first prong of our qualified immunity analysis.  The cases cited, *supra* at A, for the existence of the particular rights allegedly violated by Defendants also confirm that such rights were "clearly established" and ones "of which a reasonable person would have known" as of the time of the actions allegedly taken against Plaintiffs.

In discussing the existence of the right to intimate association, the Court in *Adkins* specifically noted as follows:

> The Supreme Court identified the constitutional right to freedom of association in "intimate human relationships" as early as 1984 (in *Roberts*, cited *supra*), and applied the same reasoning again in 1987 (in *Board of Dirs. of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 107 S. Ct. 1940 (1987)).  As a public official charged by state law with making discretionary decisions for recommending hiring and other personnel actions to the [decision makers], it was objectively reasonable to require that [the defendant] be aware of and observe the constitutional right."

*Adkins*, 982 F.2d at 956 (material in parentheses added).  Given the Sixth Circuit's allusion to the right as having been well-established in 1984 and 1987, there can be no doubt that the right to freedom of association in intimate relationships was so firmly established after the decisions in *Adkins* and *Sowards* that no reasonable public employee with personnel and supervisory responsibilities could have failed to be aware of that right.

Similarly, decisions out of the Sixth Circuit long have recognized that the First Amendment right of free speech is "'clearly established' for qualified immunity purposes."  *See, e.g., Zilch v. Longo*, 34 F.3d 359, 365 (6th Cir. 1994).  The Court there further stated:

> The law is well settled in this Circuit that retaliation under color of law for the exercise of First Amendment rights is unconstitutional, and "retaliation claims" have been asserted in various factual scenarios.  *Meyers v. City of Cincinnati,* 979 F.2d 1154 (6th Cir.1992) (firemen dismissed); *Boger v. Wayne County,* 950 F.2d 316 (6th Cir.1991) (county

> employee in Medical Examiner's Office transferred); *Draud,*
> 701 F.2d at 1170 (change in public school teacher's duties);
> *Hildebrand v. Board of Trustees,* 662 F.2d 439 (6th Cir.1981)
> (university professor denied tenure), *cert. denied,* 456 U.S.
> 910, 102 S. Ct. 1760, 72 L.Ed.2d 168 (1982); *Johnson v.
> Avery,* 393 U.S. 483, 89 S. Ct. 747, 21 L.Ed.2d 718 (1969)
> (prisoner retaliated against for seeking access to courts).

*Id.* Again, "[t]he right of an American citizen" such as Mrs. Sigler "to criticize public officials and policies and to advocate peacefully ideas for change is 'the central meaning of the First Amendment.'" *Glasson v. City of Louisville,* 518 F.2d 899, 904 (6th Cir. 1975) (quoting *New York Times,* 376 U.S. at 273)).

Again construing the facts alleged in the complaint in Plaintiffs' favor, the Court also concludes that a reasonable jury could find Defendants' actions against Plaintiffs to have been objectively unreasonable under the circumstances. *See Williams,* 186 F.3d at 691. The complaint alleges that Mrs. Sigler informed Defendants that Officer Sigler was not responsible for the handbills and letter. (Doc. #1 at ¶54). The handbills were produced by a private citizen on a matter of public concern. (*Id.* at ¶¶43-44). Defendants nonetheless terminated Officer Sigler's employment, allegedly in response to his wife's protected activities. Assuming the truth of Plaintiffs' contentions, Defendants had no reasonable basis for taking drastic adverse action against Officer Sigler as punishment for his wife's actions. "Because officials 'of reasonable competence could [not] disagree on this issue, immunity should [not] be recognized.'" *Zilch*, 34 F.3d at 365 (citing *Mumford v. Zieba,* 4 F.3d 429, 432 (6th Cir.1993)).

The individual Defendants' motion for judgment on the pleadings on the basis of qualified immunity therefore is not well taken.

### C.      Plaintiff's Age Discrimination Claims

Under the heading "Age Discrimination," Count III of Plaintiffs' complaint professes to set forth federal claims for alleged age discrimination against Keith Sigler on two different bases: first, under the Age Discrimination in Employment Act ["ADEA"], 29 U.S.C. §623 (Doc. #1 at ¶77), and second, pursuant to 42 U.S.C. § 1983 for a violation of the Equal Protection Clause of the Fourteenth Amendment.  (Doc. #1 at ¶78).

Because Defendants' motion for judgment on the pleadings offers different reasons for requesting dismissal of the two distinct approaches to age discrimination liability (*see* Docs. 15, 17), the ADEA and Equal Protection Clause claims will be addressed separately.

### i. Plaintiff's ADEA Claim

For purposes of liability under the ADEA, Defendants correctly observe that Mrs. Sigler is not the "person aggrieved," and thus cannot assert a claim of age discrimination based upon Mr. Sigler's termination.  (Doc. #15 at 12).  However, as the substantive allegations of Count III refer only to discrimination "against Plaintiff Keith Sigler" (Doc. #1 at ¶77) and to a singular "Plaintiff"(*id*. at ¶¶ 78-80; "his age" at ¶78; "he is entitled" at ¶80), the Court  finds that Plaintiffs themselves have restricted the ADEA claim to Mr. Sigler only.  Defendants have pointed to no discernible basis for their repeated concern

regarding "the extent [to which] Susan Sigler asserts a claim under the ADEA." (*See* Doc. #15 at 12, 13; Doc. #17 at 5). Mrs. Sigler has asserted no ADEA claim; Defendants' request that such claim be dismissed therefore is moot.

Regarding the ADEA claim articulated as to Plaintiff Keith Sigler, all parties recognize that said Plaintiff failed to exhaust his administrative remedies before the Equal Employment Opportunity Commission ["EEOC"] prior to filing suit. (*See* Doc. #1 at ¶14; Doc. #15 at 11-12; Doc. #16 at 9; Doc. #17 at 6-9). Defendants urge that such omission mandates dismissal. (Doc. #15 at 12, Doc. #17 at 9). Plaintiffs, however, request "that this claim be held in abeyance pending resolution of the administrative remedy." (Doc. #16 at 9).

Plaintiffs' complaint explains the absence of an EEOC filing as follows:

> Plaintiff Keith Sigler's union the Ohio Patrolman's Benevolent Association filed a grievance on his behalf because his termination was without just cause. Under the collective bargaining agreement by and between the Union and the Defendant City, the City must have just cause to terminate a police officer. An arbitration hearing began on June 16, 2006 and was concluded on June 22, 2006. The parties filed post-hearing briefs in late August 2006. As of the date of this Complaint, the arbitrator has not issued a decision."

(Doc. #1 at ¶14).

Plaintiffs urge in their opposing memorandum that the necessity of filing an EEOC complaint is "subject to the equitable tolling doctrine." (Doc. #16 at 9). Defendants

counter that because Plaintiffs do not even allege that Mr. Sigler has filed an EEOC charge, a "precondition to suit," Plaintiffs are barred from proceeding in this Court on the ADEA claim. (Doc. #15 at 11-12). They contend that filing of the requisite EEOC complaint is not subject to equitable tolling, and that Plaintiffs cannot demonstrate any of the five factors that justify tolling. (Doc. 17 at 6-9).

Although the absence of an EEOC charge is readily apparent on the face of the complaint (Doc. #1 at ¶14), the issue of Plaintiff Keith Sigler's claimed entitlement to some form of equitable tolling <u>cannot</u> be discerned from the pleadings alone. *See* Fed. R. Civ. P. 12(c), (d). Additionally, since the date of the parties' respective filings related to Defendants' Rule 12(c) motion, Defendants also have filed a "Notice of Filing Arbitration Decision" (Doc. 22), attaching a copy of the arbitrator's decision denying Plaintiff Keith Sigler's grievance (*see* Doc. 22, "Opinion and Award of the Arbitrator," p. 112), along with two affidavits relative to that decision. These documents, presumably relevant to Defendants' motion and Plaintiff's equitable tolling argument, also go beyond the pleadings.

Accordingly, a decision on Defendants' motion as to Plaintiff's ADEA claim (*see* Doc. #15) and on Plaintiff's request for abeyance (Doc. #16 at 9) is not appropriate at this juncture, as the record is insufficient to allow the Court to render a well-informed decision regarding whether Plaintiff's failure to exhaust his administrative remedies before the EEOC warrants dismissal. Once that issue is more fully briefed, and the record

is clear as to the effect of the arbitration decision, the EEOC's amenability to allowing an EEOC claim, and the EEOC's time frame for making a decision, the Court will be better positioned to rule on a motion to dismiss for failure to exhaust, or an alternative motion to hold in abeyance. In the interim, Defendants' motion to dismiss Plaintiff Keith Sigler's ADEA claim should be denied without prejudice.

### ii. Plaintiff's Equal Protection Claim

No action may lie under 42 U.S.C. § 1983 for the violation of a federal right if Congress "specifically foreclosed a § 1983 remedy" by providing "a comprehensive enforcement mechanism" for protection of that federally secured right. *See Golden State Transit Corp. v. City of Los Angeles*, 493 U.S. 103, 106, 110 S. Ct. 444 (1989). Defendants assert that by enacting the ADEA, Congress effectively preempted § 1983 liability for age discrimination under federal law. (Doc. 15 at 13-14; Doc. 17 at 9-10). They acknowledge that no reported decision of the Sixth Circuit has "squarely addressed" that precise issue, but cite multiple decisions from other circuits for the proposition they advance. (Doc. 15 at 13-14).

In one unreported decision, however, the Sixth Circuit flatly stated, without further discussion, that the plaintiff therein could "not bring her ADEA claim under § 1983," as "[t]he detailed statutory remedy created by the ADEA constitutes the exclusive means for enforcement of [the federal right against age discrimination in employment created by] the Act." *Janes v. Bardstown City Sch. Bd. of Educ.*, 97 F.3d 1452 [table], 1996 WL

536794, at *4 (6th Cir. Sept. 20, 1996) (citing *Zombro v. Baltimore City Police Dep't*, 868

F.2d 1364, 1366-69 (4th Cir.), *cert. denied*, 493 U.S. 850 (1989)).  Another panel of the

same court noted, in dicta, that both the Fourth and Fifth Circuits have held "that the

ADEA's exclusivity prevents § 1983 liability."  *Edwards v. Armstrong*, 593 F.3d 170

[table], 1995 WL 390279, at *4 (6th. Cir. June 30, 1995) (citing *Zombro, supra*, and

*Hobbs v. Hawkins*, 968 F.2d 471 (5th Cir. 1992)); *see also Lafleur v. Texas Dep't of

Health*, 126 F.2d 758, 759-60 (5th Cir. 1997) ["Congress intended the ADEA to be the

exclusive remedy for age discrimination claims"]; *Migneault v. Peck*, 158 F.3d 1131,

1140 (10th Cir. 1998) [holding that "the clearly established law on this issue operates to

defeat" an equal protection claim for age discrimination], abrogated on other grounds by

*Kimiel v. Florida Bd. of Regents*, 528 U.S. 62, 120 S. Ct. 631 (2000); *Tapia-Tapia v.

Potter*, 322 F.3d 742, 745 (1st Cir. 2003) [holding that to extent plaintiff's constitutional

claims "are a mere restatement of his age discrimination claim, they are not justiciable,"

as "[t]he ADEA provides the exclusive federal remedy for age discrimination in

employment"].

In opposing Defendants' motion, Plaintiffs do not even address this question, and

thus have directed this Court to no cases supporting their right to maintain an age

discrimination action under § 1983 in addition to under the ADEA.  (*See* Doc. #16 at 9).

In light of the dearth of opposing authority, and the limited available guidance from the

Sixth Circuit in *Janes, supra*, this Court finds that Plaintiffs cannot maintain an action for

age discrimination under § 1983. The Equal Protection claim articulated in Count III of Plaintiffs' complaint therefore must be dismissed.

### D.     <u>Plaintiff's Intentional Infliction of Emotional Distress Claim</u>

Defendant City of Englewood argues that Plaintiffs' intentional infliction of emotional distress claims must be dismissed as against it because the City has statutory immunity from such claims under Ohio Rev. Code § 2744.02. (Doc. #15 at 14-15). Plaintiffs respond that Ohio Rev. Code § 2744.09(B) specifically permits civil actions by a public employee against his political subdivision employer, and that the City thus is not immune from suit for its intentional tort in this instance. (Doc. #16 at 10).

As a general rule under Ohio law, "political subdivisions are not liable in damages." *Hubbard v. Canton City Sch. Bd. of Educ.*, 97 Ohio St. 3d 451, 453 (2002) (citing Ohio Rev. Code 2744.02(A)(1)). Ohio Rev. Code § 2744.02(B)(5) does not provide an exception to that immunity for intentional torts, including that of intentional infliction of emotional distress. *Id.* (citing *Wilson v. Stark Cty. Dept of Human Servs.*, 70 Ohio St.3d 450, 452 (1994)).

In both *Hubbard* and *Wilson*, however, the claims at issue were brought by private citizens, not by a public employee such as Officer Sigler. Ohio Rev. Code § 2744.09(B) provides an exception to political subdivisions' immunity specifically for "[c]ivil actions by an employee . . . against his political subdivision relative to any matter that arises out of the employment relationship between the employee and the political subdivision."

-24-

The Ohio Supreme Court has not considered whether its *Hubbard* holding that there is no exception to immunity for intentional torts also would apply in the context of employee actions against a subdivision employer brought pursuant to Ohio Rev. Code § 2744.09(B), and there is a split among the numerous Ohio appellate courts that have considered that issue.  *Compare, e.g., Nagel v. Horner*, 162 Ohio App. 3d 221, 833 N.E.2d 300 (Ohio App. 2005) (city not entitled to immunity on employee's retaliation and hostile work environment claims) *with Williams v. McFarland Props.*, No. CA2007-028-200 [slip op.], 2008 WL 2789285, at **3-4 (Ohio. App. July 21, 2008) (city immune under Ohio Rev. Code § 2744.02 from employee's intentional tort claim, as § 2744.09(B) & (C) exceptions do not apply).  Most, however, apparently have concluded that § 2744.09(B) does not create an exception to immunity for intentional torts, because "an intentional tort . . . necessarily occurs outside the employment relationship."  *See, e.g., Williams*, 2008 WL 2789285, at **3-4 (quoting *Brady v. Safety-Kleen Corp.*, 61 Ohio St.3d 624 (1991)).

Significantly for our purposes, the Ohio Supreme Court's pronouncement to that effect in *Brady*, combined with its decisions in *Hubbard* and *Williams*, are the best indicators available of that Court's likely interpretation of its own laws on this issue. Moreover, reported federal decisions which have addressed the issue have espoused the same conclusion.  *See Kohler v. City of Wapakoneta*, 381 F. Supp.2d 692, 700-01 (N.D. Ohio 2005); *Hale v. Village of Madison,* No. 1:04CV1646 [unpublished], 2006 WL

-25-

4590879 (N.D. Ohio May 23, 2006).

Given that Plaintiff Susan Sigler is not an employee, Plaintiffs have offered no rationale as to why an intentional infliction of emotional distress claim she brought against the City of Englewood would not be barred by Chapter 2477 immunity (*see* Doc. #16 at 10-11), and any such claim alleged on her behalf therefore must be dismissed. In light of the conclusion that Ohio law does not recognize an exception to the City's immunity for intentional tort claims brought by employees, Plaintiff Keith Sigler's claim of intentional infliction of emotional distress also must be dismissed as against Defendant City of Engelwood.

### E. Plaintiff's Disability Discrimination Claim

Count VI of Plaintiffs' complaint asserts a claim of disability discrimination under Ohio law. (Doc. #1 at ¶¶90-93). The relevant statute provides as follows:

It shall be an unlawful discriminatory practice:

(A) For any employer, because of the race, color, religion, sex, national origin, handicap, age, or ancestry of any person, to discharge without just cause, to refuse to hire, or otherwise to discriminate against that person.

Ohio Rev. Code 4112.02(A). Although the statute "conspicuously fails to include a provision imposing liability upon employees who participate in discriminatory practices," *Genaro v. Central Transport, Inc.*, 84 Ohio St.3d 293, 300 (1999) (Moyer, C.J., dissenting) (emphasis added), the Ohio Supreme Court has held "that individual

supervisors and managers are accountable for their own discriminatory conduct occurring in the workplace environment." *Id.* Accordingly, under Ohio law, "a supervisor/manager may be held jointly and/or severally liable with her/ his employer for discriminatory conduct of the supervisor/manager" which violates Ohio Rev. Code § 4112. *Id.*

In subsequent decisions, "Ohio courts have refused to extend *Genaro* to non-supervisory employees." *Minnich v. Cooper Farms, Inc.*, 39 Fed. Appx. 289, 296 (6th Cir. 2002) (citing *Hale v. City of Dayton*, No. 38800, 202 WL 191588, at *2 (Ohio Ct. App. Feb. 8, 2002); *Hoon v. Superior Tool Co.*, No. 79821, 2002 WL 93422, at *5 (Ohio Ct. App. Jan. 24, 2002)). Accordingly, claims under Chapter 4112 brought against non-supervisors in their individual capacity must be dismissed. *See Johnson v. University of Cincinnati*, 215 F.3d 561, 571 n.2 (6th Cir. 2000) (citing *Summerville v. Ross/Abbott Labs*, No. 9803517, 1999 WL 623786, at *4 (6th Cir. Aug. 10, 1999)).

Relying on those post-*Genaro* decisions, Defendants urge that Plaintiffs cannot maintain an action under Ohio Rev. Code § 4112.02 against Defendants Julie Brownfield, Cooper, Hacker or Totel because Plaintiffs "do[ ] not allege" that such individuals "were supervisors and/or managers." (Doc. #15 at 17).

In response, Plaintiffs do not contend that non-supervisory or non-managerial personnel can be held liable under Ohio Rev. Code § 4112.02, nor do they contest the status of Defendants Julie Brownfield, Hacker or Totel as non-supervisors and non-managers. Instead, they argue only that "Defendant Janine Cooper was the Director of

-27-

Personnel" for the City of Englewood at the time of Keith Sigler's termination, and that as such, "Cooper was a manager and policymaker for the City of Englewood." (Doc. #16 at 11-12) (*see also* Doc. #1 at ¶10, identifying Defendant Cooper as "the Director of Personnel" for the City of Englewood "[a]t all relevant times"). Plaintiffs therefore urge that Defendants' motion should be denied as to Defendant Cooper. (Doc. #16 at 12).

The only other specific reference to Defendant Cooper in the numbered paragraphs of Plaintiffs' complaint relates to her alleged participation as Personnel Director in "an investigation that consisted of discussions" among Defendants Cooper, Smith and both Brownfields (*see* Doc. #1 at ¶33), after Officer Sigler raised a concern about Julie Brownfield through the chain of command. (*See id.* at ¶¶30-32). Defendants argue that Plaintiffs "never allege [that] . . . Cooper was Keith Sigler's supervisor or that she discriminated against him so as to make her jointly liable with the City of Englewood." (Doc. #17 at ¶13). Given that the allegations of Plaintiffs' complaint nonetheless are enough to implicate factual questions regarding Defendant Cooper's role in the events leading to Plaintiff Keith Sigler's termination, the Court is reluctant at this stage of the litigation to conclude that Plaintiffs could not state an actionable Ohio disability discrimination claim against Defendant Cooper.

Defendants' motion for judgment on this basis therefore should be granted only as to Defendants Julie Brownfield, Hacker and Totel in their individual capacities.

In an argument essentially echoing one they raised as to Plaintiffs' age

discrimination claim, *see* discussion, *supra* at C(i), Defendants also urge that Mrs. Sigler cannot assert a disability discrimination claim based upon Mr. Sigler's termination. (Doc. #17 at 13). As with Count III, however, the substantive allegations of Count VI refer only to discrimination against a singular "Plaintiff"(Doc. #1 at ¶¶ 91-92), identified by masculine pronouns. (*See id.* at ¶91 ["terminated him," "his disability"], ¶93 ["he is entitled"].

Given that it again appears that Plaintiffs properly restricted the scope of their disability discrimination claim to Mr. Sigler only, there is no discernible basis for finding that Mrs. Sigler has attempted to assert a disability discrimination claim. Defendants' request that any such claim be dismissed therefore is moot.

### F.  **Defendants' "City Charter" Affirmative Defense**

Finally, Defendants urge that Defendants Cooper, Pelkey, Hacker, Totel and both Brownfields "had absolutely no authority to terminate Mr. Sigler's employment," and that "Plaintiffs' retaliation claim against them is not actionable" for that reason. (Doc. #15 at 6-7). In support of that proposition, they proffer a copy of the City of Englewood's Charter (*see* Doc. #14), and cite *Barkley v. City of Jackson*, 705 F. Supp. 390 (W.D. Tenn. 1988) as authority for the conclusion that a police chief cannot be held liable individually for "a police officer's termination . . . undertaken as official city action." (*See* Doc. #15 at 7).

The City Charter supplied by Defendants provides that the City Manager "shall be

the chief executive officer and the head of the administrative agencies of the

Municipality," and that "subject to the provisions of this Charter, he shall have the power

and be required to" perform certain enumerated duties, including the following:

> (a) Appoint and when necessary remove any of the appointive
> officers and employees of the Municipality except as
> otherwise provided in this Charter . . .

(Doc. #14, Charter, §3.04(a)).

The foregoing provision leaves little doubt that Defendant Smith, as the City

Manager, was empowered to terminate Officer Sigler's employment.  That fact, however,

does not end the inquiry.  Any inferences that may be drawn from the foregoing language

notwithstanding, nowhere does the Charter expressly state that power to terminate

employees is vested <u>exclusively</u> in the City Manager.  (*See id.*).  Moreover, the City

Charter does not preclude the City Manager from seeking input from or the participation

of other City administrative officials as part of his decision-making process.  (*Id.*).

Assuming that the final authority to terminate Officer Sigler's employment did rest

with the City Manager, this does not preclude the reasonable possibility – at least at this

early stage of these proceedings – that others participated in the decision to terminate

Officer Sigler's employment.  The most obvious possibility would be Chief Brownfield,

whose supervisory position and expertise in police matters could have rendered his

opinion about the need to terminate Officer Sigler's employment highly influential –

indeed, even definitive – in the eyes of the City Manager.  To quote the United States

-30-

Court of Appeals for the Sixth Circuit, "an influential recommender can be liable under §
1983, if the recommendations are shown to be sufficiently influential."  *Ward v. Athens
City Bd. of Educ.*, 187 F.3d 639 [table], 1999 WL 623730, at *8 (6th Cir. Aug. 11, 1999)
(citing *Adkins v. Bd. of Educ., supra*).

We note that in relying on the City Charter and *Barkley*, 705 F. Supp. 390, "for
purposes of the qualified immunity analysis" (*see* Doc. #17 at 4), Defendants' reply
memorandum appears to intertwine such disparate notions as individual vs. official
capacity, policymaking authority and clearly established law into one argument.  The
confusion created by that intermingling of legal concepts makes it difficult to discern
precisely what relief Defendants are requesting, on behalf of which individual
Defendants, on what basis.  Suffice it to say that, as discovery progresses, it may well
develop that no legal basis exists for retaining some of the individual Defendants in this
matter on Plaintiffs' retaliation claims.  At this point in time, however, the City Charter
itself is too slender a reed upon which to rest a legal conclusion, as Defendants attempt to,
that only Defendant Smith as City Manager could be liable under 42 U.S.C. § 1983 for
termination of Officer Sigler's employment.

Defendants' motion for judgment on the pleadings as to Plaintiffs' § 1983 First
Amendment retaliation claims based upon the City Charter (Doc. #15 at 6-7) therefore
should be denied without prejudice.

**IT THEREFORE IS RECOMMENDED THAT:**

1. Defendants' Motion for Judgment on the Pleadings (Doc. #15) be DENIED as to Count I [First Amendment Retaliation] of Plaintiffs' Complaint in its entirety (Doc. #1, ¶¶67-72); as to Count III [Age Discrimination] of Plaintiffs' Complaint with respect to Plaintiff Keith Sigler's claim under the ADEA, 19 U.S.C. § 623 (Doc. #1, ¶¶76-77 & 79-80); and as to Count VI [Disability Discrimination] of Plaintiffs' Complaint (Doc. #1, ¶¶90-93) with respect to Plaintiff Keith Sigler's claim as against Defendant Janine Cooper;

2. Defendants' Motion for Judgment on the Pleadings (Doc. #15) be GRANTED as to Count III [Age Discrimination] of Plaintiffs' Complaint with respect to Plaintiff Keith Sigler's Equal Protection claim under 42 U.S.C. § 1983 only (Doc. #1, ¶ 78); as to Count IV [Intentional Infliction of Emotional Distress] of Plaintiffs' Complaint (Doc. #1, ¶¶ 81-85) as against Defendant City of Englewood only; and as to Count VI [Disability Discrimination] of Plaintiffs' Complaint (Doc. #1, ¶¶90-93) with respect to Plaintiff Keith Sigler's claims as against Defendants Julie Brownfield, David Douglas Hacker and Eric Totel, in their individual capacities, only;

3. Plaintiffs' Equal Protection claim set forth in Count III, ¶78, be DISMISSED with prejudice in its entirety; Plaintiffs' intentional tort claims set forth in Count IV be DISMISSED with prejudice as against Defendant City of Englewood only; and Plaintiffs' disability discrimination claims set forth in Count VI be DISMISSED with prejudice as against Defendants Julie Brownfield, David Douglas Hacker and Eric Totel, in their individual capacities, only; and

4. Counts II [Civil Conspiracy], V [Negligent Infliction of Emotional Distress], and VII [Wrongful Termination - Public Policy Tort] of Plaintiffs' Complaint (Doc. #1, ¶¶73-75, 86-89, 94-96), be DISMISSED, per Plaintiffs' voluntary consent.  (Doc. #16 at 2).


                          _____s/ Sharon L. Ovington_____

                             Sharon L. Ovington

                      United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).